L.E.O. Oral Argument, not to exceed 15 minutes, provides Mr. Johnson with the time. Thank you, Your Honors. May it please the Court, I've reserved three minutes of rebuttal time. We're here to apply a federal statute by which Congress mandated that federal housing finance agency conservatorships shall not be liable for any amounts in the nature of a penalty. The claim at issue here would impose a massive liability on Fannie Mae, which is in FHFA conservatorship. It would do so under a state statute that awards $500 per technical defiolation, whether or not the plaintiff alleges any actual harm, and the plaintiffs here allege none. The claim is one for a penalty. It's barred by the federal statute that we call the penalty bar in the briefs. A plaintiff's site to this Court's decision in Murphy, in hopes of reaching a contrary result, and other decisions like that case, is establishing sort of a one-size-fits-all rule, that if a statute is held remedial for any purpose, then it must be deemed remedial for all purposes. Well, Murphy itself recognizes that that's not true. It's not true at all. Murphy discusses a Supreme Court decision called Mourning, that addresses the Truth in Lending Act claim, the very same claim that was at issue in Murphy. The Supreme Court called the claim penal in Mourning. Now Murphy was looking at a narrow common law issue, the issue of whether the claim transfers in bankruptcy. Other decisions look at similar common law doctrines. Does a claim survive the death of the plaintiff or of the defendant? Issues under particular doctrines like where and when do you have to bring the claim? But my friend Mr. Redford will not point you to a single case applying a federal penalty bar, and finding that it applies in the situation of the circumstances of Murphy, where the statute has a significant punitive element, even though it's not entirely penal. Murphy looks back to a Supreme Court case called Huntington v. Attrell, which was addressing the issue of whether one state's courts could execute the criminal laws, the penal laws, of another state. It says what we do here is apply a strict definition of penalty, a narrow definition of penalty. That's the definition Murphy adopted because it was applying a common law doctrine where a narrow definition is appropriate. Now this court and other courts have applied federal penalty bars to the same claim at issue in Murphy, the TILA claim, the Truth in Lending Act, Section 1648 claim, and held that they are not, that they are penal, excuse me, they are penal for purposes of the federal penalty bar. This court, the Petroff-Klein decision that we set forth in our Rule 28J letter. The Ninth Circuit in the Dinsmore-Thomas case. How many of those cases did the penalty go to a private party as opposed to the government? It would have gone in Petroff-Klein. It would have gone in Dinsmore. It would have gone in Hughes Development Corporation. So in all those cases, looking at the question of whether a statute imposes a penalty for purposes of a federal penalty bar, the ones we cite in the Rule 28J letter, and all, virtually all of the cases applying the 12 U.S.C. 1825b3 identically worded penalty bar that protects FDIC receiverships, those are all, to my knowledge, private plaintiff claims where they bring either a, it's often a wrongful discharge type claim, some type of employment related claim that seeks multiple damages, sometimes with a floor, sometimes with a cap. Those are, any claim under a statute that authorizes treble damages has been deemed punitive for purposes of the FDIC. You're kind of saying categorically the Murphy standard is not applicable here. Yes, Your Honor, that's correct. And we can see that because in Petroff-Klein, if Murphy had governed, the statute would have had to have been deemed penal because it was the same statute. But this Court, just I think five or six years ago in Petroff-Klein, held that a TILA 1640a claim is penal for purposes of the federal penalty bar statute within TILA. These are cases you didn't raise until the 28-J letter? Petroff-Klein, Hughes Development, and Dinsmore-Thomas are ones we raised in the FRAP 28-J letter. We cite, I'm sorry? Are they new cases? They are not newly decided cases. We discovered them in our preparation for oral argument. The rule permits expressly, I know it permits it, but it's not helpful. Look, I wish we had found the cases earlier because they support arguments in our brief. The key here is we are not making new arguments. In our opening brief, we said that the penalty bar precludes not only awards that are strictly penalties, but any awards in the nature of penalties. We said that shielding Fannie Mae from any award that has a significant punitive element was Congress's intent. That's at page 8. We said at page 13 that Congress intended to shield FHFA conservatorships from any liabilities that have any significant punitive characteristics. We made a similar statement at page 31. Plaintiffs understood that we were arguing that the penalty bar requires a broader definition of what's penal than what was applied in Murphy because in their response, they said, defendants expansively interpret section 4617J4, that's the penalty bar at issue here, as prohibiting any remedial award that shares any of the characteristics of a penalty. So we made the argument. We found new authority that supports the argument we made. I understand. So there... Can I ask a question about how these cases relate to each other? And I don't want to be mis-argued, but speaking hypothetically, what if we were to rule that Judge Caldwell was wrong and that there was no violation here? Would that obviate the necessity of addressing the issue that you raise? Well, it...potentially. And let me explain why. Potentially. We can't do potentially. We either have to go on to the other issue or not. Well, it's... If we do that. Your Honor, we can... We may not. I mean, I'm just asking so I'll know if we go down that track how that will affect this case. Certainly. And let me explain... I could understand two different answers. One, you would say, well, it isn't necessary. Or you could say, well, it would only control this case, but the state case might come along and overturn us, and then it would be... I think the latter part is certainly true, but I also think that we can win for either of two reasons, neither of which is a necessary premise of the other. Which appears to me to be absolutely true, but not answering my question. Well, if the court rules that we win under the other appeal, we've won. By the same token, if the court... Under the other appeal, we don't need to reach this issue. True. By the same token... Oh, I must ask... By the same token, if I just may indulge for a moment, Your Honor, by the same token, if we win in this appeal, the court wouldn't need to address us as parties in the other appeal. So there's not this... There's no judicial economy in that because we'd have to decide it for all the other defendants. Well, of course, the court did grant the extraordinary 1292B relief here because the issue is important. The issue has arisen in other contexts. There is a district court decision out there that purports to rule on the issue, and other tribunals, plaintiffs have picked up on that and are citing it. So if the court is not inclined to rule in this case, if the idea is the district court should have ruled the other way and shouldn't have reached the penalty bar issue, then the district court's penalty bar ruling should be vacated. It shouldn't have reached the penalty bar issue either. Are there a lot of other cases out there raising this Kentucky statutory construction problem? The only cases I know of are the two here and the Attorney General case that Mr. Hefferon mentioned. And what's that case all about? It's a similar issue. It's challenging, and I want to give no warranties of being the world's leading expert on that case, but it is a Kentucky consumer protection statute challenge to MERS essentially. Is it the same position that Mr. Redford's taking in this case? I'm sorry? Does the Attorney General take the same position that Mr. Redford takes in this case? I don't know, Your Honor. I haven't followed the progress of that case since very early on. Where is that pending? It's in the state court in Kentucky, and I could inform the court by letter if it would be useful. Probably Franklin County. That rings a bell with me, but I don't want to say for sure. So really there are two lines of cases that the court could look to to decide whether the Kentucky statute at issue here is penal. There is the Murphy line of cases, which applies this strict definition of penalty for these common law purposes. And then there is the line of cases that includes Petroff-Klein, Dinsmore-Thomas, the FDIC penalty bar cases we cited in our brief, the Hughes Development Corporation case that Judge Doty of the District of Minnesota decided. Those cases apply a lower threshold. We know it's lower because the same claim, the same claim, the TILA claim at issue in Murphy is held penal for purposes of a federal penalty bar, but not penal for this strict high threshold test for these common law doctrines. The Kentucky statute at issue here is objectively more penal than the TILA claim that was held penal for purposes of federal penalty bars. It's got a higher guaranteed recovery. Instead of converging with actual damages, the way TILA works, the plaintiff gets actual damages plus a capped increment. So as actual harm increases, the recovery converges toward actual damages. The Kentucky statute awards either a floor or treble damages, whichever is greater. So as actual harm increases, the recovery geometrically increases well beyond actual harm with no cap. There is no cap on the amount by which recovery under this statute could exceed actual harm. So on each relevant metric, the statute at issue here is more penal than a statute this court held was penal for purposes of applying a penalty bar. The district court applied the narrow definition that was error. This court should reverse. If the court decides that it need not reach the issue because the outcome of the 6168 appeal, it should vacate the district court. Thank you, counsel. I'm sorry. Opinion vacated, not a judgment. Correct. The order. Thank you, Judge Rogers. Counsel, you have your time for rebuttal. May it please the court, Trip Richard again for the appellees. On the penalty bar issue, yes, Judge Rogers, Murphy is the case. They've not cited any authority that says it's been changed, overruled, or something different. It applied to a different type of situation. Correct.  But you also have to take... Words don't always mean the same from context to context. Yes. I've heard that. Counsel, let me ask you about this Attorney General. Yes, sir. Do you know about it? Yes, sir. And what position is it taking about what? Because if it's the same question that we've got under the statute that we had in the previous case and this case too, I guess, if it's the same question, perhaps we should certify it because if it's in the state court, whatever happens will go up, presumably. So is it the same question? I would characterize it as not the same question but brought under the same statute and the view of that case or the way the case is postured at present, based on my knowledge, is it's solely, at this point, Consumer Protection Act claims, which, and again, that case is against MERS. And if you notice our case, MERS is not a party here. Our case is against several lenders. So we have different parties and we do not have Consumer Protection Act claims pending in our case. We just have the straight statutory violation claim. So there, if it's Consumer Act, it's just fraud, undue... False, misleading, deceptive act or practice is the magic word. There is a brief in that case that sets forth the opinion of the Attorney General on issues that are related to this case. That are related to our case here? I don't know whether there's a brief in that case. I know a lot of that case is under seal, but I don't know... Why is it under seal? They apparently have been conducting lots of discovery in the last several months and so there's been a lot of things that have been done. And also, the Attorney General has that interesting power pre-suit to subpoena things and get information but then it's not outwardly available. I don't want to dig too much into what goes on in Frankfurt but then they're not seeking the damages, for example, that's part of this... To my knowledge, they're not because theirs is focused on the Consumer Protection Act. Whatever damages they're seeking would not be statutory damages under this statute? Correct. It's under 367, the Consumer Protection Act statute. It's still pending in the trial court in Frankfurt? Correct. Correct. I thought... I misunderstood it was on appeal. Okay. No, sir. That one's still at the trial court level. So, with respect to Murphy, you pointed out, is this dealing with the individual wrong? The three factors, one, is it individual wrong versus the wrong to the public? Two, the recovery to the individual versus to the public? And the third one, which seems to be the focal point because you really can't deny one and two, clearly with our case here, individual, individual. Number three, the argument is $500 is disproportionate or as they call it, significantly punitive. Well, I think there's a couple of things that could be considered to do that analysis. We would certainly disagree with that notion. But if you look at the Murphy case from 1977, they hold in that that the $100 was not disproportionate. And so if $100 in 1977, 40 years ago, was not disproportionate, it's a stretch to now say that $500 40 years later is somehow disproportionate. You could also do the analysis of, well, for any individual property owner like our clients to go to any lawyer to get any advice on these issues, could they get that for $500? Probably unlikely if it's a qualified attorney to address the issue. So the idea that $500 is disproportionate to the harm, and that's before you even get to whether there's delay damages because they can't figure out who holds the note and who to pay off and who to deal with, or just the frustration. Those would be actual. Correct. Those could be actuals out there. $500, am I correct, that would be for every omitted transfer. So there are cases where something's transferred five or six times. So it'd be $500 for each one, regardless of whether there was any harm. That's correct. And at some point, clearly the analysis was, if they're not going to play ball in the system and pay the filing fees, you have to do something in relation to what's going on or the failure to act. How it's $500? Only though, I mean, there's a relationship to our discussion in the previous case about why that $500 applies if it does, and your analysis, as I took it, is that it applies even if there's no delay, no harm, no nothing. It's just your assignment that didn't get recorded. That's correct. That makes it sound more like a penalty than if you interpret it as under this subsection. Well, but if you look also in these two statutes and you look at the failure to release, failure to timely release, they make clear that is a penalty because it's per day and it increases. Contrast it with this, which is just $500 period. So the legislature, within the confines of this statute, do multiple things, so they clearly knew what they were doing and why they were doing it. And in the context of this case, if you win across the board, then you have a class action in which you then, what, start finding class members and banks, or start with the banks or start with the class members as to how you get presumably millions of dollars. Well, had these interlocutory appeals not taken place, we would be back there dealing with motions to certify a class. Yes, sir. And assuming that that was done, though, then just maybe this isn't available yet, whether do you start looking for class members or do you start going to the banks and saying you've got 10,000 mortgages that you haven't recorded and you try to get that data? Well, these banks should know because they're the ones who've been internally shuffling this paper around, so they should know exactly what the numbers are. That would be our discovery, is how many have you transferred internally, not filed in the record? And once you got all that money, you would try to find the people that it went to? The money that it went to would be property owners in the Commonwealth. Then you'd have to go find them after the lawyers get their cut. Which would be their information, because again, they know that they hold a note mortgage on John Smith's property at 106 Main Street. They transferred it five times, so they have his information and his numbers. Mr. Redford, some of your briefs had a little bit of the sound of this is an attack on the MERS system. Is that fair? Is it fair? Well, I think fundamentally, it's if you choose. And if you win, it's going to disable the MERS system in Kentucky. I disagree that it would disable it. That was what I took from your brief. Well, there's 49 other states, and I think in Kentucky, they can choose to either comply with the law or move on down the road. That's effectively it. Or get the legislature to change the law. Third option. Yes, sir. In conclusion, we ask that Judge Caldwell's opinion be affirmed. Thank you, Your Honors. Briefly, four points on rebuttal. First, my friend, Mr. Redford, said that Murphy is the controlling case. It's not, and it can't be, because it's not consistent with Petroff-Klein or Dinsmore-Thomas. Dinsmore-Thomas, the Ninth Circuit, actually applied a penalty bar, worded identically to the one at issue here, to bar the claim at issue in Murphy. So it is not possible that Murphy is dispositive. Dinsmore-Thomas actually applies the statutory language at issue here and reaches the opposite conclusion. The same is true of Hughes' development. Second, Mr. Redford suggested that the statute was not penal here because its purpose was to provide a remedy to individuals, yet I recall that in 6168, the prior appeal, Mr. Redford said that the purpose of the statute was to protect the integrity of the land records. So it has a public purpose. Now it may have a blend of remedial elements and punitive elements, but under Petroff-Klein, Dinsmore-Thomas, Hughes' development, if there is a significant punitive element, then the statute is penal for purposes of a federal penalty bar. Third point that's important here is this is a class action seeking a mandatory $500 bounty for tens of thousands of parties, many of whom would recover for multiple assignments. All of the harms Mr. Redford describes, even if they had been alleged, which they weren't, so they aren't really part of this case, those would all occur at the time a property owner goes to make that final payment. So the only assignment that could really have caused any harm is the last one, yet under Mr. Redford's theory, the plaintiff gets to recover for each of the 6, 8, 12 prior assignments. It's an aggregation of technical violations that would lead to a massive recovery. I say that because Congress thought about that issue in the TILA context and Congress carved out exactly this kind of recovery. It put a hard cap on class-wide recoveries and it disallowed the statutory damages here. So no, this isn't a TILA case, but yes, Congress has thought about whether this sort of structure is penal. And when it disallowed this kind of recovery under TILA, it was expressing the view that just this kind of recovery is punitive in the class action context. I thank the Court for its attention. You said four and you stated three, did you miss the fourth one? I combined the last three, the last two by class action and the multiple assignments. Thank you counsel, the case will be submitted. The remaining, I'm trying to give him a chance. Thank you. The case will be submitted, the remaining cases will be submitted on briefs and you may adjourn the Court.